Filed 6/4/26  P. v. Ellison CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL ELLISON,<br><br>    Defendant and Appellant. | H052931<br>(Monterey County<br>Super. Ct. No. 23CR008881) |

Defendant Michael Ellison was convicted by jury of first degree murder (count 1), three counts of assault by a life prisoner (counts 2, 4, and 6), attempted murder of a peace officer (count 3), and attempted murder (count 5).  As relevant to the appeal, the jury found defendant committed the murder and both attempted murders with premeditation and deliberation.  The charges stemmed from three separate incidents that took place while defendant was in prison.  Defendant contends the trial court committed prejudicial error when it granted the prosecution's request for consolidation of the charges.  He further argues consolidation violated his constitutional rights to due process and a fair trial.  As we will explain, we see no prejudicial error and will affirm the judgment.

## I.    BACKGROUND

### A.  COUNTS 1 AND 2

At the time of the events in April 2018, defendant was incarcerated at Salinas Valley State Prison.  While inmates were exercising in the prison yard, correctional officer Julian Narvaez saw an inmate named Jason Lewis seated at a picnic table with

defendant standing behind him. Defendant started punching Lewis in the back, and Narvaez reacted by telling all of the inmates in the yard to get down on the ground. Most of the inmates complied, but defendant and Lewis did not. Lewis "got up from the table and was trying to back away from" defendant but "was unsuccessful at defending himself, falling to the floor." As Lewis fell, "the strikes that were punches turned into a stabbing-like motion." Narvaez saw blood on Lewis's shirt. Defendant crouched next to Lewis and continued stabbing him. He did not stop until officers approached him. The "skirmish line" that responded to the incident included correctional officers Xochitl Gonzales and Rogelio Lopez, Jr., who both testified at trial and corroborated Narvaez's account.

As officers subdued defendant, he attempted to discard an object. Officers recovered the object, which appeared to be an inmate-manufactured weapon. It was made of metal with a cloth handle and was between eight and nine inches long. Lewis later died from his injuries.

### B. COUNTS 3 AND 4

In July 2019, defendant was housed in the "administrative segregation" wing at Soledad State Prison. Correctional officers Marvin Bonilla and Thomas Cleary escorted defendant to the shower. When Bonilla removed defendant's handcuffs, defendant "spun around" and "stepped out of the shower." Defendant said, "Come on" and "rushed" toward Cleary, "swinging" and "punching" at him. The officers unsuccessfully attempted to subdue defendant with pepper spray. Defendant continued swinging his arms at Cleary, making contact with Cleary's face. Cleary pushed defendant away and Bonilla "tried to get a hold of him," but Bonilla was unable "to take him down to the floor." Bonilla slipped and fell on the floor, allowing defendant to break free and rush at Cleary again. Defendant also slipped and fell but continued swinging at Cleary, making contact with Cleary's leg. Bonilla got up and grabbed defendant from behind, at which point he noticed defendant was holding a weapon. As Bonilla and defendant scuffled,

2

defendant swung the weapon at Bonilla twice. Other officers eventually responded and subdued defendant. Defendant attempted to discard the weapon, which officers recovered from a nearby cell. Officers also searched defendant's cell and saw "grooves" in the concrete floor, which could "indicate someone sharpening [an] inmate-manufactured weapon to get a point on it from metal that they have found." A metal "TV bracket that had been mounted to the wall of the cell" had been removed. As a result of the incident, Cleary suffered a "large cut" across the bridge of his nose, "a stab wound through the palm of his hand," a cut on his left leg near the groin area, and two stab wounds on his left thigh.

## C. COUNTS 5 AND 6

In August 2023, an alarm alerted correctional officers to a fight in defendant's cell at Salinas Valley State Prison. Officer Christian Lopez Gonzalez responded to the alarm. Lopez Gonzalez did not know defendant but knew his cellmate, LaStourgeon. When he got to the cell, Lopez Gonzalez "noticed blood spatter all over the floor" and "on the walls," and saw that "both inmates were facing the cell door covered in blood." LaStourgeon was standing behind defendant and "holding on to his wrists." Defendant was holding what appeared to be a knife in his right hand. Lopez Gonzalez ordered the inmates to stop fighting and told defendant to drop the knife, and used pepper spray to subdue the inmates when they did not comply. LaStourgeon started coughing and lost his grip on defendant's right arm, which was holding the knife. Defendant broke away from LaStourgeon, who retreated and "sat down in the bottom bunk towards the back of the cell." After catching his breath, defendant again "charged" at LaStourgeon and "attempted to strike his upper torso area with the weapon." As LaStourgeon resisted, defendant "continued to attempt to strike" him in his torso and face.

When Lopez Gonzalez ran out of pepper spray, another officer stepped in and continued spraying into the cell. Defendant eventually "walked up to the cell door and chucked the weapon out through the food port." The inmate-manufactured weapon was

3

made of metal and was between eight and nine inches long. Correctional officer Josyeah Gonzales, who arrived at the cell before Lopez Gonzalez, testified he saw defendant attempt to stab LaStourgeon. As a result of the incident, LaStourgeon suffered scratches on his face and cheek, and puncture wounds on his chest, lower leg, shoulder, face, forearm, and pinky finger.

### D. JOINDER MOTION AND RULING

The prosecution moved to consolidate the three cases, arguing in relevant part that the charges would be cross-admissible due to defendant's use of an inmate-manufactured weapon in all three incidents; none of the counts was particularly inflammatory relative to the others; and the evidence in all three cases was equally strong. Defense counsel countered that the charges were too similar for consolidation, leading to juror confusion and use of the charges as evidence of defendant's propensity for violence.

The trial court stated that it "would be instructing the jury that they have a limited way in which they can consider the evidence and it is certainly not propensity evidence." Addressing the cross-admissibility of the charges, the court noted "a potential for cross admissibility" on the issues of "intent and/or malice," which would "dispel any notion of prejudice." The court continued: "The Court does see that these, all three cases, involve the same class of crimes. Two of them involve the very same crime, attempted murder. [¶] The Court has no information before it that would suggest that any of the cases is stronger or weaker than any other case such that it would be prejudicial to the defendant because of a weak case would be joined with a strong case. [¶] None of these cases involve the death penalty. Actually, that was previously taken off the table by the District Attorney's Office. So we do not have that potential issue. [¶] And the Court does not see that there is any potential prejudice that would outweigh the interests set forth in Penal Code Section 954. [¶] So, therefore, the motion is granted at this time."

4

## E. VERDICT AND SENTENCING

The jury found defendant guilty on all six counts and found true various allegations, including premeditation and deliberation attached to counts 1, 3, and 5. In a bifurcated proceeding, the jury found true other allegations not directly relevant to the issue on appeal. The trial court sentenced defendant on count 1 to life in prison without the possibility of parole, consecutive to 45 years to life on count 3, consecutive to 27 years to life on count 6, consecutive to sentencing enhancements totaling 45 years.

## II. DISCUSSION

Defendant argues reversal is required because the trial court erroneously granted the prosecution's joinder motion. He relies in part on caselaw addressing defense requests to *sever* charges, rather than prosecution requests to *consolidate* charges. Emphasizing that distinction, the Attorney General argues the cases are irrelevant to our analysis. But defendant opposed the joinder motion on grounds consistent with the severance-related factors he now argues on appeal, and the trial court addressed those factors in its ruling. As the Attorney General cites no authority which would support an assertion of forfeiture under the circumstances, we will consider the merits of defendant's claim.

Offenses in separate cases that are "connected together in their commission," or are "of the same class of crimes or offenses," may be consolidated under Penal Code section 954. Although defendant acknowledges the offenses here are of the same class of crimes, he argues they were not connected in their commission. Where, as here, offenses meet a statutory basis for consolidation, it is the defendant's burden to "make a clear showing of prejudice to establish that the trial court abused its discretion" in allowing consolidation. (*People v. Mendoza* (2000) 24 Cal.4th 130, 160.) Factors relevant to a severance analysis—considered by the trial court here in granting the prosecution motion—include: "(1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the

5

defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." (*Id.* at p. 161.)

The trial court noted that a finding of cross-admissibility generally negates the possibility of prejudice. (*People v. Merriman* (2014) 60 Cal.4th 1, 38.) But the court did not expressly rule on the charges' cross-admissibility, noting only "a potential for cross admissibility" to prove "intent and/or malice" under Evidence Code section 1101 and acknowledging the possibility that the prosecution could move for cross-admission at a later date. Those comments, together with the court's consideration of further factors, indicate its ultimate decision was not premised on a finding of cross-admissibility. Notably, the prosecution does not appear to have sought cross-admission of the charges at trial, and the Attorney General does not rely on cross-admissibility as a ground for affirmance; we therefore assume for purposes of our analysis that the charges were not cross-admissible. "However, any lack of cross-admissibility is not, by itself, sufficient to show prejudice and bar joinder." (*People v. Stitely* (2005) 35 Cal.4th 514, 532; see Pen. Code, § 954.1 ["evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact"].)

Defendant argues he was prejudiced because counts 3 and 4 (the offenses committed against correctional officer Cleary) were likely to unusually inflame the jury against him, and the evidence of premeditation and deliberation on count 5 (the attempted murder of cellmate LaStourgeon) was "far weaker" than the evidence of premeditation and deliberation on counts 1 and 3. Although the evidence of premeditation and deliberation on count 5 may not be overwhelming, it is not as weak as defendant contends. When correctional officers arrived at the cell housing defendant and LaStourgeon, they found both inmates covered in blood with additional blood spatter on

6

the floor and walls. Defendant was holding a weapon in his right hand, and LaStourgeon was restraining defendant in an apparent effort to protect himself from further attack. After pepper spray caused LaStourgeon to lose his grip on defendant and retreat to the back of the cell, defendant did not end the incident by complying with officers' commands to drop the weapon. Instead, he charged at the seated LaStourgeon and repeatedly attempted to stab him in the torso and face. That later conduct strongly suggests an attempt to kill LaStourgeon with premeditation and deliberation, notwithstanding any ambiguity about the start of the incident. That no such ambiguity was present as to counts 1 and 3 does not preclude their joinder with count 5, as "a mere imbalance in the evidence between the joined crimes does not signal a risk that one charge will be prejudicially bolstered." (*People v. Johnson* (2015) 61 Cal.4th 734, 752.)

The strength of the evidence in all three cases undermines defendant's contention that the attack on correctional officers was likely to prejudicially inflame the jury against him. (See *People v. Thomas* (2012) 53 Cal.4th 771, 800.) That contention is further undermined as to counts 1 and 2 by the fact that correctional officer Cleary did not die from his injuries, in contrast to Lewis, the victim in counts 1 and 2. (See *People v. Lamb* (2024) 16 Cal.5th 400, 418.) Defendant has not made a clear showing of prejudice to establish that granting consolidation was an abuse of discretion.

Defendant also asserts consolidation of the charges deprived him of due process and a fair trial. Even if a trial court's decision to consolidate cases was " 'correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts or defendants for trial resulted in gross unfairness depriving the defendant of due process of law.' " (*People v. Soper* (2009) 45 Cal.4th 759, 783.) In reviewing the constitutional claim, we consider the same factors described above and we assess "the evidence actually introduced at trial to determine whether 'a gross unfairness has occurred such as to deprive the defendant of a fair trial or due process of law.' " (*People v. Bean* (1988) 46 Cal.3d 919, 940.)

No gross unfairness occurred here. Three strong cases were tried together but the charges were not cross-admitted for any improper purpose. The court specifically instructed the jury that each count "is a separate crime" and that the jury "must consider each count separately and return a separate verdict for each one." We presume the jury followed the court's instructions and considered each count independently. Defendant points to a single statement in closing argument where the prosecutor said of defendant: "When he brought a weapon to each of these three incidents and began repeatedly stabbing the other person, he's making willful, premeditated, deliberate decisions to kill that person despite them fighting back, despite orders, despite physical restraint[.]" But the isolated comment "did not urge the jury to draw an impermissible inference" by considering the evidence cumulatively. (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1440.) Rather, the prosecutor expressed the belief that defendant acted with premeditation and deliberation in each case, and the prosecutor then proceeded to specify how the evidence in each case supported the finding.

Seeing no abuse of discretion in consolidating the three cases and no constitutional violation in the conduct of the consolidated trial, we will affirm the judgment.

### III.    DISPOSITION

The judgment is affirmed.

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

H052931
*The People v. Ellison*